The opinion of the Court was delivered by
Wardlaw, J.
The defendant has contended that a jailer is not an officer amenable to the provisions of the Act of 1829, (6 Stat. 390,) “ for the punishment of official misconduct of district officers.”
The Sheriff’s Act of 1S39 (11 Stat. 33, § 41, 42) directs, that when the sheriff does not himself exercise the functions of jailer, he shall appoint “a proper and discreet person” tobe jailer, by writing, which shall be deposited in the Clerk’s office ; — that the jailer shall receive and keep persons committed, and make certain reports to the Court; and that the sheriff shall be liable for the jailer.
A jailer, it is said, is not a public officer, but the servant of the sheriff; he is appointed by the sheriff, removable at the will of the sheriff, and for him the sheriff is liable.
Bac. Abr. “ Offices and Officers.” “ An office is a right to exercise a public function or employment, and to take the fees and emoluments belonging to it.” Every part of this definition applies to the place of jailer. “ It is said to be a rule, that where one man hath to do with another’s affairs against his will, and without his leave, this is an office, and he who is in it is an officer.” No public employment is more clearly marked by the distinguishing trait of an office here mentioned, than the *371 ordinary function of a jailer. “Officers ought to be honest men, legal and sage; and this, says my Lord Coke, was the policy of prudent antiquity, that officers did ever give grace to the place, and not the place only to grace the officer.” “ Every man is a public officer who hath any duty concerning the public ; and he is not the less a public officer where his authority is confined to narrow limits; because it is the duty of his office, and the nature of that duty, which makes him a public officer, and not the extent of his authority.” All this is properly applicable to a jailer under the Act of 1839 ; — and that Act, whilst regulating the mode of his appointment, and making some special provisions concerning certain duties prescribed for him, and the connection between him and the sheriff, recognizes him as a known officer, to whom the common law had assigned duties and privileges. (Bac. Abr. “ Gaol and Gaoler. D.”)
The mode of appointment enters- not into the essentials of an office, nor does the duration of the office. Many high offices have been held at the will of the appointing power. The enactment concerning the sheriff’s liability for the jailer gives to persons who are injured by the acts of the jailer, recourse to the sheriff; but without misconduct on his own part, the sheriff is no more liable criminaliter for a jailer, than his own sureties are liable for him. It was especially against those acts of misconduct, from which no particular individual can allege special damage to himself, that the Act of 1829 was intended to guard, by subjecting public officers to indictment. Great scandal to the district and great inconvenience to the community may result from such negligent or drunken habits, dishonesty, abuse of power, or other misconduct in a district officer, as are subjected to punishment in the mode provided. Many good men may have occasion to notice, lament, and even suffer from such misconduct; but no one can show direct damage to himself; all are reluctant to become public prosecutors, and proceedings under the Act, are alike to be instituted ex mero moiu, by the Solicitor, the Grand Jury, or the Judge. When a case of gross misconduct has been established, few public officers better de *372 serve the reproof of the Court, and the penalties of the law. The sheriff had not made the appointment in writing. He had, however, made an appointment, and under it the jailer was, and had long been, in the exercise of his office, at least as officer defacto. To the sheriff, or to the jailer himself, the writing, as the required evidence of the appointment, might have become material to sustain a plea of justification in certain cases, or to acquit the sheriff from a charge of misconduct on his part, in permitting one not duly appointed to exercise the office of jailer. But, an officer who has assumed the duties of an office, cannot himself dispute the validity of his own appointment. This principle, often applied in civil cases, was enforced in a criminal proceeding against one who acted as constable, (3 Strob. 146: The State vs. Maberry,) and is essential to the protection of the public, against the misconduct of those who usurp office, or neglect regulations which have been made concerning offices, to which they have been rightfully appointed.
The Act of 1829 is confined to officers “ whose authority is limited to a single election or judicial 'districtand it is contended that a jailer is not included — first, because his authority is not limited to a district, but extends beyond, as for instance in the fresh pursuit of felons, who have escaped from jail; and, second, because his authority, if limited, is confined to the jail, the prison-house itself — and the Act contemplates only those whose authority is co-extensive with a district. The Act, as removal from office was looked to, was framed so as to exclude those officers who, under the State Constitution, (Art. V. § 3, and Amendment of 1828,) can be removed only by impeachment. It clearly includes all whose authority does not extend beyond a district, whether it may be limited to a territorial subdivision or not, and does not more plainly embrace a magistrate or a clerk, than it does a jailer. A jailer is jailer for a particular district. Special circumstances may occasionally give to him or to a sheriff certain privileges out of his district; but he, no more than the sheriff, can, on that account, properly say that his authority is not limited to his own district.
*373 The second section of the Act of 1829 enacts that “ it shall be the duty of the presiding Judge, before whom such officer shall be tried, to cause a certified copy of the indictment to be immediately transmitted to the Governor, who shall, upon receipt thereof, declare, by proclamation, his office vacant, and the same shall be filled, as in case of the death or resignation of the incumbent.” It is said that this jailer has been removed from his office by the sheriff, and his place filled by a successor appointed by the sheriff; that therefore the Governor cannot declare his office to be vacant, nor can the vacancy be filled, as in case of death or resignation ; and that the whole second section shows that the Act contemplated only those offices for which a term was prescribed by law, and which, without proclamation under this Act, could become vacant only by expiration of term, death or resignation. It has not been contended, but with equal force might be, that the Act was intended to operate only during the continuance of a delinquent officer’s term, and consequently, that by resigning, an officer might always evade punishment for official misconduct. This latter proposition would impute extravagant absurdity to the Legislature, and it helps to show the true meaning of the Act. The first section provides for punishment by fine and imprisonment of an officer convicted under it; the second provides for removal from office. In cases to which the second is not applicable, the first loses none of its efficacy. The evils which the Act was intended to correct, may exist as well in the case of a clerk appointed by a Judge, to act during the sitting of a Court, (11 Stat. 80, § 42,) or in the case of a sheriff, whose term of office expired after he became liable to indictment under the Act.of 1844, (11 Stat. 296,) or in the case of a jailer now removed from office, as in the case of an officer yet exercising the functions of office. The other punishment may be awarded, although the removal from office may have been rendered unnecessary. The cases which have been suggested, show that the second section cannot avail to restrain the generality of the first. The Governor’s proclamation may have been intended to be the definite and orderly de *374 termination of the office, in a case where it would serve that purpose; but it may also have been designed to be a notice to guard the public against farther assumptions of office by the convicted officer, or as a disgrace to him, in itself constituting part of the punishment to which his offence is subject. It may, in all cases, be proper for the Judge, according to the Act, to cause the certificate to be sent to the Governor, and for the Governor to issue a proclamation, varying its terms according to the state of the case. But however that may be, the salutary provisions of the Act would be strangely defeated, if they could be extended only to cases where vacancy of the office must result from the conviction.
The defendant’s counsel has not, in this Court, urged the second ground of appeal, but still he has submitted it, so as to require an adjudication. The specifications of misconduct contained in the first and second counts of the indictment, were made with such terms, “unlawful — in violation of his official duty, &c.”— as left to the Court and jury inquiry into degree, manner and circumstances. Whilst every possible delivery of spirituous liquors by a jailer to his prisoners need not have been held criminal, as is every delivery to a slave by one having no permit, the inquiry ascertained that in the acts alleged and proved against tire defendant, his duty had been violated.
Our jails are generally, by their plan and situation, ill designed for the preservation of good discipline in them, and our statutory regulations on this subject are very deficient. But fortunately, the number of prisoners is not often great; and the propriety of that discipline which keeps apart males and females, felons and debtors, whites and blacks, and excludes from the use of the prisoners noxious stimulants, is too obvious to be .neglected, by any such “ discreet person as ought to be jailer.”
Sometimes rumors of abuses, which turn a jail into a den of iniquity and school of vice, have called for remarks from the bench to the Grand Jury, and such abuses must be expected to come from the commingling of prisoners, and furnishing them with spirituous liquors. Wherever, by these or similar means, *375 used by himself, or connived at when others use them, the sheriff or jailer allows an interruption to be made of the good order which should prevail throughout a prison, his conduct tends to bring the administration of public justice into disgrace; and when carried to a considerable extent, produces a state of things worse than would be the turning loose of all prisoners committed to his keeping. In the case before us, some dark features are exhibited. The defendant has been acquitted of habitual drunkenness in office: but once, at least, he drank to excess with the prisoners in his charge. He kept in the jail itself a quantity of spirituous liquor — under the circumstances, enormous. He witnessed scenes of debauchery, to which the use of liquor naturally led; and there is too much reason to fear that the .riotous excess which he indulged, at a late hour of the night, were in some way connected with the awful destruction of human life which a few hours afterwards was involved in the burning of the jail.
The motion is dismissed.
O’Neall, Withers, Whitner, Glover and Munro, JJ. concurred.

Motion dismissed.